UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC., | No. C 08-4254 PJH |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS** |
| v. | |
| BLUE JAY, INC., et al., | |
| Defendants. _____/ | |

Before the court is defendant Neil Luxenberg's ("Luxenberg") motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, which plaintiff j2 Global Communications, Inc. ("j2") opposes. Luxenberg's motion to dismiss came on for hearing before this court on December 3, 2008. Luxenberg appeared through his counsel, John Gherini. Plaintiff appeared through its counsel, John Brown. Having carefully read the parties' papers and considered the relevant legal authority, the court hereby DENIES Luxenberg's motion to dismiss, for the reasons stated below.

## BACKGROUND

Defendant Blue Jay, Inc. ("Blue Jay") is a corporation with its principal place of business in Nevada. First Amended Complaint ("FAC") ¶ 2. Defendant Luxenberg is a resident of Nevada and officer of Blue Jay as well as the various other entity defendants named in the FAC, including Nationwide Chemical Corporation ("Nationwide"). Id. ¶¶ 4, 6. Defendants are in the business of advertising products or services through fax advertisements and are responsible for creating all, or virtually all, of the content of the faxes they send out. Id. ¶¶ 20-21. Defendants retained "fax broadcasters" named Vision Lab Telecommunications, Inc. ("Vision Lab") and Protus IP Solutions, Inc. ("Protus") to send some or all of the fax advertisements received by j2. Id. According to j2, Luxenberg

allegedly participated in and/or oversaw all functions of the entity defendants named in this action.  Id. ¶ 25.

j2 is a Delaware corporation with its principal place of business in Los Angeles, California.  FAC ¶ 1.  j2 sends and receives faxes with its servers over its lines, and forwards digital copies of the fax images to its customers, who can retrieve them via e-mail.  Id.  j2 sends and receives millions of faxes per day, primarily through its "eFax" service.  Id.  j2's "eFax" service allows j2's customers to receive and send electronic images of faxes through j2's fax machines.  FAC ¶ 14.

j2 owns and maintains fax machines in California.  FAC ¶ 14.  j2's fax machines receive faxes and then convert those faxes to paper or create a digital file that is e-mailed to a customer.  Id.  Incoming faxes tie up j2's limited bandwidth over which signals for the transmission of faxes and e-mails are sent.  FAC ¶ 15.  This costs j2 money in that j2 is forced to purchase additional lines and/or bandwidth to service its customers' needs.  Id.  Unsolicited fax advertisements, also known as "junk faxes," not only cause harm to j2 by tying up its limited bandwidth, but they also cause harm to j2's customers in that customers have to pay for unwanted faxes.  Id.  These junk faxes serve to effectively shift the advertisement costs of defendants to fax recipients such as j2 and its clients.  Id.  The junk faxes also cause damage to j2's reputation insofar as j2's customers are led to believe that j2 delivers the junk faxes.  Id. ¶ 16.

Beginning before or about June 2004, j2 alleges that defendants engaged in a campaign to market and sell their products throughout the United States, including California.  FAC ¶ 28.  Specifically, j2 alleges that defendants knowingly and deliberately sent numerous unsolicited fax advertisements, without j2's prior express or implied permission, to its fax machines in California, thereby depriving j2 of the full use of its fax machines.  FAC ¶¶ 28, 33.  j2 subsequently filed a state court action in San Francisco Superior Court against, among others, Luxenberg in his individual capacity on June 3, 2008, alleging claims for: (1) violation of the Telephone Consumer Protection Act, 47

U.S.C. § 227 ("TCPA"), 47 C.F.R. § 64.1200(a)(3) and 47 C.F.R. § 68.318(d); (2) trespass to chattels; (3) violation of California Business and Professions Code § 17200 *et seq.* ("UCL"); and (4) aiding and abetting violations of the TCPA, trespass to chattels and the UCL.  On September 9, 2008, Luxenberg removed the action on the basis of diversity jurisdiction.  j2 filed a first amended complaint on September 24, 2008, alleging claims for: (1) violation of the TPCA, 47 U.S.C. § 227 (b)(1)(C); (2) violation of the TPCA, 47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. § 64.1200(a)(3) (iv); (3) trespass to chattels; (4) violation of the UCL; and (5) aiding and abetting violations of the TCPA, trespass to chattels and the UCL.  On October 14, 2008, Luxenberg filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Luxenberg filed an opposition on November 12, 2008.

**DISCUSSION**

A.   Legal Standard

Under Rule 12(b)(2), a court may dismiss a case for "lack of jurisdiction over the person."  Fed.R.Civ.P. 12(b)(2).  If a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant.  See Doe I v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (per curiam).  However, without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss.  Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003).  That is, the plaintiff must present facts which, if true, establish jurisdiction.  Id.  "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  Id.  Where, as here, there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state in which the court sits.  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.

3

First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (citations omitted).  "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).  Thus, a district court must examine whether exercising jurisdiction over a defendant would offend due process.  Mattel, 354 F.3d at 863.  Due process requires an out-of-state defendant to have such minimum contacts with the forum state that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction, general and specific. Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).  General jurisdiction exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  In the absence of general jurisdiction, a nonresident defendant may still be sued in the forum if specific jurisdiction exists.  Id.  Specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claim in question.  See Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-16 (1984).  Because j2 has not presented any argument in support of general jurisdiction over Luxenberg in this action, the court will limit its analysis to determining whether specific jurisdiction exists.

"A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).  The Ninth Circuit employs a three part test to determine whether there is specific jurisdiction over a defendant: "Specific" jurisdiction exists if (1) the defendant has performed some act

4

or consummated some transaction within the forum or otherwise purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. Mattel, 354 F.3d at 863. The plaintiff bears the burden of satisfying the first two prongs of the test. Schwarzenegger, 374 F.3d at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. Id. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Id.

B.   Evidentiary Objections

Before analyzing the parties' substantive contentions, the court will consider the evidentiary objections filed by j2 on November 19, 2008. The statements objected to are set forth in Luxenberg's reply brief. Specifically, j2 objects to Luxenberg's characterization of his former deposition testimony (see Stephen Ring ("Ring") Decl., Exh. 1) on the grounds that: (1) Luxenberg failed to cite to the particular lines in the deposition transcript that he was relying on; (2) the deposition transcript speaks for itself; and (3) Luxenberg misstated the testimony. j2's objections are improper. The objections, although characterized as "Objection[s] to Evidence," are aimed only at Luxenberg's characterizations and purported misstatements of evidence, not at the actual evidence supporting those statements. As such, the court need not consider j2's objections. See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., 556 F.Supp.2d 1122, 1126 n. 1 (E.D. Cal. 2008) (refusing to consider plaintiff's evidentiary objections to defendants' separate statements of undisputed facts because such objections were not directed at the evidence supporting those statements). Nevertheless, because the court is unaware of any rule of evidence that would permit it to sustain j2's objections, and j2 cites none, j2's objections are OVERRULED.

C.   Luxenberg's Motion to Dismiss

5

1    Luxenberg argues that this court lacks personal jurisdiction over him because he is a
2 Nevada resident and has no connection with the state of California.  In addition, Luxenberg
3 argues that to the extent he is a former corporate officer of defendants Blue Jay and
4 Nationwide - two companies which utilized the fax advertising services of Vision Lab and
5 Protus - his alleged acts on behalf of those corporations cannot be attributed to him as
6 individual acts establishing personal jurisdiction over him in his individual capacity.

7    Luxenberg's contacts with California are as follows: Luxenberg was the former
8 president of Blue Jay and Nationwide; Blue Jay and Nationwide utilized the advertising
9 services of Vision Lab and Protus; Vision Lab and Protus directed fax advertisements to
10 j2's "eFax" service; these advertisements were subsequently routed to j2's network of
11 servers located all over the country, including California, digitized, and then sent to j2's
12 customers located all over the country, including California.  See Luxenberg Decl.  In
13 addition, it is undisputed that Luxenberg is a Nevada resident, Blue Jay and Nationwide are
14 Nevada corporations with their principal place of business in Nevada, and that Luxenberg
15 does not have any contacts with California other than his acts taken in the course of his
16 duties on behalf of Blue Jay and Nationwide.  See id.  In short, all of Luxenberg's contacts
17 with California occurred in his corporate capacity on behalf of Blue Jay and Nationwide.

18    j2 contends that these contacts are sufficient to satisfy the purposeful availment
19 prong because Luxenberg purposefully directed fax advertisements into California for
20 pecuniary gain, thereby purposefully availing himself of the privilege of doing business in
21 California.  j2 argues that while Luxenberg did not actually send the fax advertisements
22 himself, he was the "sole guiding force" behind the fax advertisements insofar as he
23 supplied his agents, Vision Lab and Protus, with fax numbers of California residents.  j2
24 also argues that the claims alleged against Luxenberg directly arise out of the fax
25 advertisements, and that the exercise of personal jurisdiction over Luxenberg is reasonable
26 under the facts of this case.  Luxenberg, for his part, contends that he did not purposefully
27 direct any activities toward California in his individual capacity insofar as his acts in
28

6

connection with the fax advertisements were made in his official capacity as an officer of Blue Jay and Nationwide, Nevada corporations with their principal place of business in Nevada. As such, Luxenberg maintains that these acts are not material for purposes of establishing minimum contacts in his individual capacity. In addition, Luxenberg argues that j2 has failed to identify any specific action taken by Luxenberg himself (in either his corporate or personal capacity) that establishes he directed fax advertisements into California. Finally, Luxenberg argues that j2's claims do not arise out of or relate to his forum-related activities because he had no contacts with California in his individual capacity, and that jurisdiction over him is unreasonable under the facts of this case.

1.   Purposeful Availment

To support a finding that specific jurisdiction exists, j2 must initially demonstrate that Luxenberg either purposefully availed himself of the privilege of conducting activities in California, or purposefully directed his activities toward California. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract here." Schwarzenegger, 374 F.3d at 802. A showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum. Id. at 803. To establish a plaintiff must prove that the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on the basis of their employers' minimum contacts within a given jurisdiction. In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." Colt Studio, Inc. v. Badpuppy Enterprise, 75 F.Supp.2d 1104, 1111 (C.D.

Cal. 1999); see also Wolf Designs, Inc. v. DHR Co., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (" 'Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.' ").  Though employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."  Calder v. Jones, 465 U.S. 783, 790 (1984) (finding jurisdiction proper over non-resident corporate employees where the employees were the primary participants in an alleged wrongdoing intentionally directed at a California resident).

     The fiduciary shield doctrine may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities.  Wolfe Designs, 322 F.Supp.2d at 1072 (citations omitted).  " 'A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.' " Wolfe Designs, 322 F.Supp.2d at 1072 (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort")).  Personal liability on the part of corporate officers have typically involved instances where the defendant was the "guiding spirit" behind the wrongful conduct, or the "central figure" in the challenged corporate activity.  Wolfe Designs, 322 F.Supp.2d at 1072 (citing Davis v. Metro Productions, Inc., 885 F.2d 515, 524 (9th Cir. 1989)).

     If acts taken by a corporate officer subjects the officer to personal liability (i.e., the corporate officer authorized, directed or participated in tortious conduct), and those acts create contact with the forum state, such acts are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual.  Seagate

8

Techology v. A.J. Kogyo Co., 219 Cal.App.3d 696, 701-04 (1990); see also Taylor-Rush v. Multitech Corp., 217 Cal.App.3d 103, 117 (1990) (holding that the fiduciary shield doctrine did not insulate non-resident corporate officers and directors from personal jurisdiction where these defendants made fraudulent misrepresentations purposely directed at plaintiff, a California resident); Goehring v. Superior Court (Bernier), 62 Cal.App.4th 894, 907 (1998) (declining to hold that a general partner who is allegedly liable on substantive grounds may insulate himself or herself from jurisdiction merely because that partner has acted solely in his or her partnership capacity).[1]

In Davis, the Ninth Circuit determined that assertion of personal jurisdiction over two corporate officers, each 50% shareholders of the co-defendant corporation, was presumed reasonable because the record indicated that they purposefully directed their activities toward Arizona by soliciting business from that state and by meeting with a citizen of that state to discuss the opportunity for his clients, also citizens of the forum, to invest in the fraudulent venture. Davis, 885 F.2d at 522-23. There, the court concluded that jurisdiction extended to the two non-resident officers because they had sufficient contacts with Arizona to support exercise of personal jurisdiction over them under that state's long-arm statute. In reaching this conclusion, the court reasoned that because the Arizona long-arm statute extends to the limit of constitutional due process, and because it is not equitably limited by the fiduciary shield doctrine, the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of Calder and Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984).[2] Id. at 522. As a result, "Arizona's long-arm statute may, consistent with

---

[1] In Goehring, the court recognized that "the Seagate Technology and Taylor-Rush courts noted the United States Supreme Court has implicitly rejected the fiduciary shield doctrine as a constitutional component of due process and therefore the doctrine is inconsistent with California's long-arm statute." Goehring, 62 Cal.App.4th at 906.

[2] In Keeton, the United States Supreme Court stated: "It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other [individual] defendants. . . . [But] we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." Id. at 781 n. 13.

9

constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona." Id. The court notes that while the court in Davis stated that "[t]he corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant," Davis, 885 F.2d at 520, the court declined to find personal jurisdiction solely on the grounds that the defendants acted on behalf of the corporation. Rather, the court found personal jurisdiction over the defendants because they were also the only shareholders of the corporation and purposefully directed their actions toward the forum state and should reasonably have known that their actions could have an effect on the plaintiff, and that the brunt of the injury caused by their actions would be felt in the forum state. Id. at 522-23. Therefore, the court determined that the defendants could have "reasonably foreseen that they would be haled into [the forum state's] courts." Id. at 523.

In Seagate Technology, the Court of Appeal reversed an order quashing service of summons against a Japanese citizen, who was president of a Japanese corporation and a California corporation and had no contacts with California in his individual capacity. The president there had met with the plaintiff vendor in California, and had sent a letter guaranteeing any debts to the vendor which the California corporation might incur. The California corporation went bankrupt and plaintiff filed suit to recover its loss. Seagate Technology, 219 Cal.App.3d at 699-700. There, the court recognized that although a court cannot rely solely on the status of a defendant as a director or officer to find the existence of personal jurisdiction, a corporate officer may be held personally responsible for causing a corporation to act (i.e., the corporate officer authorized, directed, or meaningfully participated in tortious conduct), and that act may be imputed to the officer for purposes of establishing personal jurisdiction over him, notwithstanding the so-called "fiduciary shield doctrine." Seagate Technology, 219 Cal.App.3d at 702-03. The court determined that a California court could properly assume jurisdiction over a non-resident corporate officer whose only contacts with the state were in a corporate capacity if (1) the officer's act was

one for which the officer would be personally liable; and (2) the officer's act in fact created contacts between the officer and the forum state. Seagate Technology, 219 Cal.App.3d at 703-04. In so holding, the court explained that tortious acts by corporate officers that create contact with the forum state are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual. Id. at 701-04. That is, the acts may be considered in determining if the contacts between the individual and the state are substantial enough as to permit the state to exercise personal jurisdiction over the individual, or whether the exercise of personal jurisdiction over the individual offends "traditional notions of fair play and substantial justice." Id. at 703-04.

Based on the foregoing authorities, it is evident that the fiduciary shield doctrine does not prevent this court from exercising jurisdiction over Luxenberg merely because his acts in California were undertaken in an official, business capacity. However, this does not mean that Luxenberg is automatically subject to jurisdiction in California just because his corporation is subject to jurisdiction. Rather, this court must examine Luxenberg's conduct in California to determine whether he developed sufficient minimum contacts for personal jurisdiction. The conduct that may be considered in determining whether the assertion of personal jurisdiction over Luxenberg is appropriate are those acts which Luxenberg would be personally liable for, i.e., tortious acts he authorized, directed, or meaningfully participated in. Such acts may be considered in determining whether the contacts between Luxenberg and California are substantial enough as to permit California to exercise personal jurisdiction over Luxenberg under California's long-arm statute, and whether the exercise of personal jurisdiction over Luxenberg offends "traditional notions of fair play and substantial justice."

Here, j2 alleges that Luxenberg, as manager of Blue Jay and the other entity defendants, hired Vision Lab and Protus for the purpose of sending fax advertisements across the country, including to j2's fax machines in California without j2's permission. j2

1  further alleges that Luxenberg participated in and/or oversaw all functions of the entity
2  defendants that purposefully sent fax advertisements to j2's fax machines in California.  In
3  addition, j2 submitted evidence in the form of deposition testimony indicating that
4  Luxenberg engaged in bulk faxing to market products on behalf of Blue Jay and
5  Nationwide.  Ring Decl., Exh. 1.  Specifically, the testimony indicates that Luxenberg was
6  the president and sole officer, director and shareholder of Blue Jay, and in this capacity he
7  was responsible for arranging bulk faxing (500,000 per month) on behalf of Blue Jay from
8  1998 to the end of 2006, which included creating the fax advertisements and then sending
9  them to the fax broadcasters (e.g., Vision Lab and Protus) with a list of bulk fax numbers
10 for broadcasting.  Id.  The testimony further indicates that Luxenberg would target specific
11 states or regions, depending on the product being advertised, by state or zip code.  Id.

12         Luxenberg, for his part, contends that he is not subject to personal jurisdiction In
13 California because he acted as a corporate officer on behalf of corporate entities when he
14 hired third-party advertisers to market products.  Thus, according to Luxenberg, whatever
15 faxes Vision Lab or Protus sent on behalf of Blue Jay and Nationwide are not attributable to
16 him in his individual capacity.  In short, Luxenberg argues, for the purposes of determining
17 his minimum contacts, his acts in procuring the advertising services of Vision Lab and
18 Protus are attributable to Blue Jay and Nationwide, not to him, and they accordingly do not
19 support the assertion of personal jurisdiction over him.  In other words, Luxenberg argues
20 that the "fiduciary shield" doctrine insulates him from jurisdiction based on his acts as a
21 corporate officer for Blue Jay and Nationwide.

22         In support of his position, Luxenberg primarily relies on Colt Studio, 75 F.Supp.2d at
23 1111 (citing Shearer v. Superior Court, 70 Cal.App.3d 424, 430 (1977) and Mihlon v.
24 Superior Court, 169 Cal.App.3d 703 (1985)).  Such reliance is misplaced.  Colt Studio
25 relied on Shearer and Mihlon for the proposition that the official acts of a corporate officer
26 or director are immaterial to the question of the individual's minimum contacts.  Colt Studio,
27 75 F.Supp.2d at 1111 ("[f]or jurisdictional purposes, the acts of corporate officers and
28

directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals.").

However, in Calder, the Supreme Court explicitly held that the individual defendants' status as employees does not insulate them from jurisdiction. Calder, 465 U.S. at 790. In Calder, the Court concluded that there was personal jurisdiction over the individual defendants based on a combination of their writing and editing of a story in their capacities as employees and their knowledge that such a story would be circulated widely in California with the intended effect of causing injury there. Id. at 789-90. Cases following Calder have called into question the authorities upon which Colt Studio relied. See e.g., Davis, 885 F.2d at 522 (rejecting corporate officer defendants' arguments that they were protected from jurisdiction by a fiduciary shield; the correct jurisdictional inquiry analyzed the contacts of each defendant with the forum state); Seagate Technology, 219 Cal.App.3d at 701 (rejecting the notion that the official acts of officers and directors are immaterial to the question whether they were individually subject to jurisdiction); Goehring, 62 Cal.App.4th at 905 (citing cases questioning the continuing validity of the fiduciary shield doctrine). Rather than follow Colt Studio, the court adopts the view that an employee, officer, or director may be subject to personal jurisdiction where the individual is a "primary participant" in the alleged wrongdoing, i.e., where the individual had "control of, and direct participation in the alleged activities." Wolf Designs, 322 F.Supp.2d at 1072.

Having reviewed the allegations and exhibits concerning the instant motion, the court finds that Luxenberg engaged in activity of the requisite quality and nature to establish sufficient minimum contacts with California to warrant this court's exercise of personal jurisdiction over him. As set forth above, the evidence before the court reveals that Luxenberg was the "guiding spirit" and the "central figure" behind the alleged wrongdoing, i.e., unsolicited fax advertising. The court finds that j2 has offered sufficient evidence to support its claim that Luxenberg was directly involved and personally participated in the unsolicited fax advertising that allegedly affected its fax machines and

13

customers in California.  See Texas v. American Blastfax, Inc., 164 F.Supp.2d 892, 898 (W.D. Tex. 2001) (finding that a corporate officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved, i.e., the corporate officer was the "guiding spirit" and the "central figure" behind the TCPA violation).

Luxenberg's deposition testimony, for instance, demonstrates that he personally directed, participated in, and authorized the unsolicited fax advertising.  He was the president and sole officer of Blue Jay and Nationwide, and was personally and solely responsible for arranging bulk faxing on behalf of Blue Jay, which included creating fax advertisements and hiring third-party advertisers to market these products across the country, including California.  Indeed, as the only officer of Blue Jay and Nationwide, Luxenberg set company policies and oversaw day-to-day operations.  He had direct, personal involvement in and ultimate control over every aspect of the alleged wrongful conduct.  Therefore, by hiring third-party advertisers to direct fax advertisements toward California for pecuniary gain, Luxenberg purposefully availed himself of the privilege of conducting activities in this forum.  Because Luxenberg knew or should have known that his actions would cause j2 to suffer harm in California, Luxenberg should reasonably have expected to be haled into court in California.  See Verizon Online Services, Inc. v. Ralsky, 203 F.Supp.2d 601, 616 (E.D. Va. 2002) (Personal jurisdiction over non-resident defendants was appropriate on allegations that they had transmitted millions of unsolicited e-mails through Verizon's servers in Virginia, thereby overburdening and causing damage to those servers.  The court found that the defendants reasonably should have expected to be haled into court in Virginia for "deliberately exploiting plaintiff's e-mail servers for pecuniary gain while trespassing plaintiff's property.").

    2.   Forum-Related Activities

To establish that its claim arises out of or relates to the defendants' forum-related activities, the plaintiff must demonstrate that the contacts constituting purposeful availment

14

gave rise to the current suit. <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000). In order to satisfy the requirement, the plaintiff must show that "but for" the defendants' forum-related conduct, the injury would not have occurred. <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001); <u>see also</u> <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1322 (9th Cir. 1998). The contacts must also be "sufficiently related to the underlying causes of action" and "have some degree of proximate causation to be considered for purposes of jurisdiction." <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 243 F.Supp.2d 1073, 1085 (C.D. Cal. 2003) (citing <u>Doe v. American Nat'l Red Cross</u>, 112 F.3d 1048, 1051-52 (9th Cir. 1997)).

The court finds that this requirement is satisfied. But for Luxenberg's conduct in creating the fax advertisements and hiring third-party advertisers to broadcast them, j2 would not have been injured in California.

### 3. Reasonableness

"Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable." <u>Sinatra v. National Enquirer, Inc.</u>, 854 F.2d 1191, 1195 (9th Cir. 1988). The defendant bears a "heavy burden" of overcoming this presumption. <u>Ballard v. Savage,</u> 65 F.3d 1495, 1500 (9th Cir. 1995). To meet this "heavy burden" the defendant must put on a "compelling case" that the presence of some other considerations would render jurisdiction unreasonable. <u>Bancroft & Masters</u>, 223 F.3d at 1088 (citing <u>Burger King</u>, 471 U.S. at 476-77). To determine reasonableness, the court must consider (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant of defending in the forum state, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. <u>Bancroft & Masters</u>, 223 F.3d at 1088 (citing <u>Burger King</u>, 471 U.S. at 476-77).

The court finds that Luxenberg has not met his burden to show that the

reasonableness factors weigh against the exercise of jurisdiction. First, because j2 has shown purposeful availment into California, this factor favors j2. Second, the burden on Luxenberg of litigating in California will be no greater than would be the burden on j2 in litigating in Nevada, so this factor is neutral. Third, the parties have not identified a conflict between California and Nevada, so this factor is also neutral. Fourth, California has a strong interest in providing an effective means of redress for its residents from unlawful conduct, so this factor favors j2. Fifth, it would be more efficient to resolve the controversy in California rather than in Nevada given that all of j2's witnesses reside in California and the entity defendants will be litigating this action in California, so this factor favors j2. Sixth, it is important to plaintiff to have this dispute resolved in California, so this factor favors j2. Seventh, Nevada is a viable alternative forum, though not particularly preferable to California, so this factor favors Luxenberg, but only slightly.

Given that the balance on most of these factors either favors j2 or is neutral as to both parties, the court finds that Luxenberg has failed to meet his burden to present a "compelling case" rendering the exercise of jurisdiction unreasonable. Accordingly, Luxenberg's motion is denied.

## CONCLUSION

For the reasons stated above, Luxenberg's motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 5, 2009

PHYLLIS J. HAMILTON
United States District Judge