**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    J2 GLOBAL COMMUNICATIONS, INC.,              No. C-08-4254 PJH (EMC)

9              Plaintiff,

10        v.                                      **REPORT AND RECOMMENDATION**
                                                  **RE PLAINTIFF'S MOTION FOR**
11   BLUE JAY, INC., *et al.*,                    **DEFAULT JUDGMENT**

12             Defendants.                        **(Docket No. 48)**

13   _____/

14

15        Plaintiff j2 Global Communications, Inc. has filed a motion for default judgment against

16   Defendant Neil Luxenberg, which the presiding judge has referred to the undersigned for a report

17   and recommendation.  Having considered j2's brief and accompanying submissions, as well as all

18   other evidence of record, the Court hereby recommends that the motion be **GRANTED**.

19                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

20        As alleged in the complaint, j2 is a corporation that receives and sends faxes for its

21   customers.  Through its "eFax" service, j2 receives faxes for its customers through its fax servers

22   and forwards images of these faxes as e-mail attachments to its customers.  *See* Compl. ¶¶ 14-15.

23        As established by a declaration from Mr. Luxenberg (submitted near the outset of the

24   litigation), Mr. Luxenberg is a resident in and citizen of the United States, and currently he is the

25   president of Blue Jay Sales Corporation, Red Rose USA, Inc., and Transtar Corporation.  *See*

26   Docket No. 1 (Luxenberg Decl. ¶¶ 3, 5).  He was formerly the president of Blue Jay, Inc., Red Rose

27   International, Ltd., Nationwide Chemical Corporation, Nuts, Inc., Red Rose Sales & Marketing

28   Corporation, and Off Broadway Theatres, Inc.  *See* Docket No. 1 (Luxenberg Decl. ¶ 4).  Each of the

**United States District Court**
For the Northern District of California

1   above companies was a named defendant in the lawsuit but has since been dismissed from the case,

2   leaving Mr. Luxenberg as the only remaining defendant.

3           According to j2's complaint, each the companies identified above sent unsolicited facsimile

4   advertisements to j2's fax servers, *see* Compl. ¶¶ 13, 20, and Mr. Luxenberg participated in and/or

5   oversaw the sending of the advertisements. *See* Compl. ¶¶ 25-26. j2 alleges that it was harmed by

6   the companies and Mr. Luxenberg's actions because the unsolicited faxes tied up j2's lines and used

7   its limited bandwith. *See* Compl. ¶ 15. j2 also alleges harm to its reputation as a result of the

8   unsolicited faxes because its customers mistakenly believed that j2 was responsible for them. *See*

9   Compl. ¶ 16.

10          On June 3, 2008, j2 initiated the instant lawsuit against Mr. Luxenberg and the above

11  companies.[1]  In its complaint, which was originally filed in state court, j2 asserted various state and

12  federal causes of action, including one pursuant to the Telephone Consumer Protection Act

13  ("TCPA").  That statute provides in relevant part that, with certain exceptions, it shall be unlawful

14  for a person within the United States "to use any telephone facsimile machine, computer, or other

15  device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §

16  227(b)(1)(C).

17          On September 9, 2008, Mr. Luxenberg removed the case to federal court and subsequently

18  filed a motion to dismiss for lack of personal jurisdiction.  Several months later, and before any

19  ruling on the motion to dismiss, j2 began to serve discovery on Mr. Luxenberg. *See* Docket No. 50

20  (Brown Decl. ¶ 6) (noting that j2 served interrogatories and document requests on 12/31/2008).

21          Judge Hamilton denied Mr. Luxenberg's motion to dismiss on January 5, 2009. *See* Docket

22  No. 27 (order).  Under the Federal Rules of Civil Procedure, Mr. Luxenberg had ten days thereafter -

23  - *i.e.*, until January 19, 2009 -- to file an answer to j2's complaint. *See* Fed. R. Civ. P. 12(a)(4)(A)

24  ("[I]f the court denies the [Rule 12] motion . . . , the responsive pleading must be served within 10

25  days after notice of the court's action . . . .").

26

27  _____

28          [1] j2 also sued Mr. Luxenberg's son, Shaun M. Luxenberg.  Like the company defendants, Shaun Luxenberg has also been dismissed from the case.

1    Several days before the answer was due, Mr. Luxenberg's counsel filed a motion to

2  withdraw.  *See* Docket No. 23 (motion, filed on 1/16/2009).  The day after the answer was due, j2

3  propounded additional discovery on Mr. Luxenberg.  *See* Brown Decl. ¶¶ 8-9 (noting that j2 served

4  requests for admission on 1/20/2009).  Mr. Luxenberg never responded to the requests for

5  admission.  *See id.*  Subsequently, j2 moved for entry of default based on Mr. Luxenberg's failure to

6  respond to the complaint.  *See* Docket No. 30 (motion, filed on 1/23/2009).  The Clerk of the Court

7  entered Mr. Luxenberg's default on January 28, 2009.  *See* Docket No. 32 (notice of entry of

8  default).

9    Approximately a month later, Judge Hamilton issued an order in which she granted Mr.

10  Luxenberg's counsel's motion to withdraw and set aside the entry of default.  *See* Docket No. 35

11  (order, filed on 2/24/2009).  Judge Hamilton stated, however, that j2 was entitled to seek another

12  entry of default against Mr. Luxenberg.  (j2 and Mr. Luxenberg's counsel had stipulated to the

13  setting aside of the entry of default without prejudice to j2's right to renew.)  Accordingly, the very

14  next day, j2 moved for entry of default a second time, *see* Docket No. 36 (motion, filed on

15  2/25/2009), and Mr. Luxenberg's default was entered by the Clerk of the Court on February 26,

16  2009.  *See* Docket No. 38 (notice of default).

17    According to counsel for j2, he subsequently had a conversation with Mr. Luxenberg in

18  which he informed Mr. Luxenberg that j2 would be moving for a default judgment.  *See* Brown

19  Decl. ¶ 12.  Counsel represents that "Luxenberg responded that he did not plan to defend himself in

20  this action and that he had no money to pay j2."  Brown Decl. ¶ 12.  Counsel then sent Mr.

21  Luxenberg a letter (via mail and e-mail) in which he confirmed j2's intent to move for default

22  judgment.  *See* Brown Decl. ¶ 13 & Ex. 8.  Counsel added: "I also confirm that you have stated that

23  you do not intend to defend yourself in the legal action in the Northern District of California.  [¶]

24  Please advise me immediately if I am mistaken."  Brown Decl., Ex. 8 (letter, dated 3/24/2009).

25  According to counsel, he thereafter had a telephone conversation with Mr. Luxenberg in which Mr.

26  Luxenberg's "near-verbatim response" was as follows:

27        I do not plan on filing responses [to the discovery served by j2].  If I
          defended myself, I would lose anyway, as I am guilty of fax
28        broadcasting.  If I hired a lawyer and he defended me, what good

1            [would] it do, I'm guilty of fax broadcasting, and I just end up paying
2            him too.  I did it and I'm admitting it and I'm paying the price right
           now.

3  Brown Decl. ¶ 14.

4        It was after this conversation that j2 filed the currently pending motion for default judgment.

5  In its motion, j2 seeks a default judgment on its TCPA claim only.  For that claim, j2 asks to be

6  awarded treble statutory damages and injunctive relief.

7  **II.   DISCUSSION**

8        In its motion, j2 argues that it should be granted a default judgment against Mr. Luxenberg

9  based on (1) his failure to provide responses to j2's interrogatories and document requests and (2)

10  his failure to respond to the complaint.

11  A.   Federal Rule of Civil Procedure 37

12        On or about December 31, 2008, j2 propounded interrogatories and document requests on

13  Mr. Luxenberg.  *See* Brown Decl. ¶ 6.  At the time that the discovery was served, Mr. Luxenberg's

14  motion to dismiss for lack of personal jurisdiction was still pending.  However, several days later,

15  Judge Hamilton issued her order denying the motion to dismiss.  Since that date, Mr. Luxenberg has

16  not responded to either the interrogatories or the document requests.  Based on that failure, j2 asks

17  that Mr. Luxenberg be sanctioned with a default judgment.

18        Under Federal Rule of Civil Procedure 37(d), a court "may, on motion, order sanctions if . . .

19  a party, after being properly served with interrogatories under Rule 33 or a request for inspection

20  under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P.

21  37(d)(1)(A)(ii).  Sanctions that may be issued include a default judgment as well as other sanctions

22  listed in Rule 37(b)(2)(A)(i)-(v).  *See* Fed. R. Civ. P. 37(d)(3).

23        Although terminating sanctions may be issued, the Court concludes that, in the case at hand,

24  such sanctions are not appropriate pursuant to Rule 37(d) at this juncture.  *But see* Part II.B, *infra*

25  (recommending default judgment pursuant to Federal Rule of Civil Procedure 55).  Under Ninth

26  Circuit case law, when a court is considering case-dispositive sanctions under Rule 37(d), it should

27  take into account the availability of less drastic sanctions.  *See Connecticut General Life Ins. Co. v.*

28  *New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  Here, less drastic sanctions are

United States District Court

For the Northern District of California

1  available; for example, j2 could have moved to compel.  If Mr. Luxenberg then failed to obey an

2  order from the Court granting the motion to compel, there would be a much stronger case for a

3  default judgment as a sanction, particularly if the order included a warning to Mr. Luxenberg that a

4  default judgment would be entered if he failed to respond.  *See id.* (taking into consideration whether

5  lesser sanctions had been attempted or whether the recalcitrant party had been warned about the

6  possibility of case-dispositive sanctions).  In such a situation, there would be little doubt that Mr.

7  Luxenberg's failure to respond was willful.  *See id.* (noting that "[o]nly 'willfulness, bad faith, and

8  fault' justify terminating sanctions").  Moreover, taking this less drastic approach would not result in

9  any obvious prejudice to j2.  *See id.* (stating that, in deciding whether or not to issue terminating

10  sanctions, another factor for a court to consider is the risk of prejudice to the party moving for

11  sanctions).

12          The Court acknowledges that, arguably, a sanction of a default judgment is justified because,

13  according to j2's counsel, Mr. Luxenberg has disavowed any intent to defend in the lawsuit;

14  therefore, the failure to respond to the interrogatories and document requests cannot be considered

15  anything except willful.  The Court, however, is reluctant to make a finding of willfulness,

16  especially since additional factors may have contributed to the failure to respond to the discovery

17  requests, including the fact that (1) the motion to dismiss was still pending at the time that the

18  discovery requests were served and (2) subsequently counsel for Mr. Luxenberg withdrew from the

19  case.

20  B.     Federal Rule of Civil Procedure 55

21          Although the Court does not believe that a default judgment pursuant to Rule 37(d) is

22  appropriate, it does recommend a default judgment pursuant to Federal Rule of Civil Procedure 55.[2]

23  Under Rule 55, a default judgment is an available remedy to a plaintiff when the defendant has

24

25          [2] A default judgment pursuant to Rule 55 may be entered so long as the defendant is not an infant
26  or incompetent person or a person in military service.  See Fed. R. Civ. P. 55(b)(1); 50 App. U.S.C. §
   521.  j2 has provided adequate evidence that Mr. Luxenberg is not an infant or an incompetent person.
27  *See, e.g.*, Brown Decl. ¶ 12 (stating that Mr. Luxenberg said he has a son who is a law student); Docket
   No. 1 (Luxenberg Decl. ¶ 5) (stating that he is the president of various corporations).  There is no
28  evidence of record to indicate that Mr. Luxenberg is a person in military service or a person otherwise
   exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

**United States District Court**

For the Northern District of California

"failed to plead or otherwise defend" the lawsuit.  Fed. R. Civ. P. 55(a).

       1.    <u>Adequacy of Service of Process</u>

       In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested."  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  In the instant case, there does not appear to be any issue regarding proper service.  First, in his notice of removal, Mr. Luxenberg acknowledged service of the summons and complaint on August 11, 2008.  *See* Docket No. 1 (Not. ¶ 3).  Second, in his motion to dismiss, Mr. Luxenberg could have raised the issue of service of process but did not do so, thus waiving the challenge.  *See* Fed. R. Civ. P. 12(g)(2) (providing that, as a general matter, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").  The Court therefore concludes that service of process was properly effected on Mr. Luxenberg.

       2.    <u>Failure to Plead or Otherwise Defend</u>

       As stated above, under Rule 55, a default judgment is an available remedy to a plaintiff when the defendant has "failed to plead or otherwise defend" the lawsuit.  Fed. R. Civ. P. 55(a).  In the instant case, Mr. Luxenberg did initially defend the action, filing, for example, a notice of removal and then a motion to dismiss.  However, after Judge Hamilton denied the motion to dismiss, Mr. Luxenberg was obligated to file an answer to the complaint, which he did not do.  *See* Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the [Rule 12] motion . . . , the responsive pleading must be served within 10 days after notice of the court's action . . . .").  This failure to file an answer -- in spite of the earlier defense -- is an adequate basis for a Rule 55 default judgment.  *See SEC v. Small Cap Research Group, Inc.*, No. 05-15638, 2007 U.S. App. LEXIS 4317, at *3 (9th Cir. Feb. 16, 2007) (concluding that the district court did not abuse its discretion by denying defendant's motion to set aside default when default was entered for failure to answer the complaint after defendant's motion to dismiss was denied); *Investcorp Retirement Specialists, Inc. v. Ohno*, No. C-07-01304 RMW, 2007 WL 2462122, at *2 (N.D. Cal. Aug., 2007) (acknowledging that the clerk of the court may enter default for defendant's failure to answer the complaint after defendant's motion to dismiss

United States District Court

For the Northern District of California

1  was denied, but ultimately setting aside the entry of default).

2       3.    _Eitel_ Analysis

3       As noted above, a default was entered against Mr. Luxenberg on February 26, 2009, based

4  on his failure to answer the complaint.  *See* Docket No. 38 (notice of default).  Upon entry of

5  default, a party may move for a default judgment.  "The district court's decision whether to enter a

6  default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

7  Factors that a court may consider in exercising that discretion include:

8          (1) the possibility of prejudice to the plaintiff, (2) the merits of

        plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

9          the sum of money at stake in the action; (5) the possibility of a dispute

        concerning material facts; (6) whether the default was due to

10          excusable neglect, and (7) the strong policy underlying the Federal

        Rules of Civil Procedure favoring decisions on the merits.

11

12  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, the factual

13  allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount

14  of damages.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

15       In the instant case, the majority of factors weigh in favor of a default judgment.  For

16  example, if the motion for default judgment were to be denied, then j2 would likely be without a

17  remedy.  *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS

18  11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would

19  leave them without a remedy.  Prejudice is also likely in light of the merits of their claims.");

20  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion

21  for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

22  Also, the sum of money at stake in the action is appropriate since j2 seeks only statutory damages,

23  *see id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the

24  seriousness of Defendant's conduct"), and, because Mr. Luxenberg has not filed an answer to the

25  complaint, there is nothing to suggest that there is a possibility of a dispute concerning material

26  facts.  Mr. Luxenberg has purportedly disavowed any intent to defend this action, *see* Brown Decl.

27  ¶¶ 12, 14, and there is no evidence to the contrary.  Indeed, according to j2's counsel, Mr.

28  Luxenberg admitted that he was guilty of fax broadcasting.  *See* Brown Decl. ¶ 14.  Finally, there is

United States District Court
For the Northern District of California

1  no indication that Mr. Luxenberg's default was due to excusable neglect, especially taking into

2  account that Mr. Luxenberg initially participated in the lawsuit, filing both a notice of removal and

3  then a motion to dismiss.  Also, as noted above, j2's counsel represents that Mr. Luxenberg has

4  stated that he does not intend to defend.  *See Brown Decl. ¶¶ 12, 14.*  This does appear to be the case

5  since Mr. Luxenberg failed to file an opposition to the motion for default judgment even though a

6  copy of the motion was served on him.  *See* Docket No. 52 (proof of service for motion for default

7  judgment).

8          The only *Eitel* factors that deserve closer analysis are the second and third factors -- *i.e.*, the

9  merits of j2's substantive claim and the sufficiency of the complaint.  These factors basically

10  "require that a plaintiff state a claim on which the [plaintiff] may recover."  *Philip Morris, USA, Inc.*

11  *v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  In the instant case, j2 seeks a

12  default judgment on one claim only, *i.e.*, the TCPA claim.  Under the statute, it is unlawful for a

13  person within the United States "to use any telephone facsimile machine, computer, or other device

14  to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).

15          The Court concludes that j2 has adequately stated a claim for relief under the TCPA.  In its

16  complaint, it alleges (and the Court takes these allegations as true based on the entry of default) that

17  certain companies sent unsolicited faxes to j2's fax servers, *see* Compl. ¶¶ 13, 20, and that Mr.

18  Luxenberg, as the manager of these companies, participated in and/or oversaw the sending of the

19  faxes.  *See id.* ¶¶ 25-26.  Moreover, Mr. Luxenberg's liability is further substantiated by the requests

20  for admission that j2 served on Mr. Luxenberg, which are deemed admitted based on Mr.

21  Luxenberg's failure to respond to the discovery.[3]  *See* Brown Decl., Ex. 5 (Requests for Admission

22  Nos. 2-12) (asking Mr. Luxenberg to admit (1) that Blue Jay Inc. delivered unsolicited faxes; (2) that

23  he "approved," "created," and was "totally responsible for" all advertisements to be faxed by Blue

24  Jay Inc.; (3) that he "purchased and determined the facsimile numbers to which all facsimile

25  _____

26          [3] *See* Fed. R. Civ. P. 36(a)(3) (providing that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves . . . a written answer or objection"); Fed.

27  R. Civ. P. 36(b) (providing that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended"); *see also Asea, Inc. v.*

28  *Southern Pac.*, 669 F.2d 1242, 1245 (9th Cir. 1981) (stating that, based on the language of Rule 36, "[i]t is undisputed that failure to answer or object to a proper request for admission is itself an admission").

1   advertisements" of Blue Jay Inc. would be sent; and (4) that "no other person. . . has ever been an

2   officer, director, or shareholder" of Blue Jay Inc.).  At least one court has expressly held that an

3   individual corporate officer, if acting on behalf of the corporation, may be held personally liable for

4   purposes of the TCPA if he or she had "direct, personal participation in or personally authorized the

5   conduct found to have violated the statute and was not merely tangentially involved."  *Texas v. Am.*

6   *BlastFax, Inc.*, 164 F. Supp. 2d 892, 896-99 (W.D. Tex. 2000); *cf. Coastal Abstract Serv., Inc. v.*

7   *First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (stating that "[a] corporate officer or

8   director is, in general, personally liable for all torts which he authorizes or directs or in which he

9   participates, notwithstanding that he acted as an agent of the corporation and not on his own

10  behalf").

11      Because the *Eitel* factors largely weigh in favor of a default judgment, the Court

12  recommends that j2's motion for default judgment pursuant to Rule 55 be granted.

13          4.      <u>Damages and Injunctive Relief</u>

14      Having concluded that a default judgment is appropriate, the Court runs to the issue of relief.

15  In its motion, j2 seeks treble statutory damages and injunctive relief.  Each is addressed below.

16              a.      <u>Statutory Damages</u>

17      Under the TCPA, a plaintiff may recover either the actual monetary loss sustained as a result

18  of the violation of the statute or "receive $500 in damages for each such violation, whichever is

19  greater."  47 U.S.C. § 227(b)(3)(B).  In the instant case, j2 does not offer any proof as to what its

20  actual monetary loss was as a result of Mr. Luxenberg's actions; therefore, j2 may obtain only $500

21  per violation of the statute.  According to j2, Mr. Luxenberg violated the TCPA twenty-eight times

22  by sending twenty-eight unsolicited faxes.  The Court finds that there is sufficient evidence to

23  support j2's claim that Mr. Luxenberg sent twenty-eight unsolicited faxes.  That evidence consists of

24  deemed admissions to requests for admissions propounded by j2.

25      j2 served on Mr. Luxenberg a set of requests for admission, attached to which were copies of

26  twenty-eight facsimile advertisements.  *See* Brown Decl., Ex. 5 (requests for admission).  The faxes

27  on their face indicate that they were sent from Blue Jay, Inc., a company for which Mr. Luxenberg

28  has admitted that he was formerly the president.  *See* Docket No. 1 (Luxenberg Decl. ¶ 4).  In the

1  requests for admission, j2 asks Mr. Luxenberg to admit that he sent each of those faxes without the

2  permission of j2 or the recipient.  Mr. Luxenberg failed to respond to the requests for admission.  By

3  failing to respond, Mr. Luxenberg is deemed to have admitted to sending the unsolicited faxes

4  pursuant to Rule 36.  *See* note 3, *supra*.

5         Because Mr. Luxenberg violated the TCPA twenty-eight times, j2 is entitled to at least

6  $14,000 (*i.e.*, 28 x $500).  j2, however, asks that it be awarded treble statutory damages.  The TCPA

7  does have a provision allowing for such damages.  The provision states in relevant part as follows:

8  "If the court finds that the defendant willfully or knowingly violated this subsection [*i.e.*, 47 U.S.C.

9  § 227(b)] or the regulations prescribed under this subsection, the court may, in its discretion,

10  increase the amount of the award to an amount equal to not more than 3 times the amount available

11  under subparagraph (B) of this paragraph."  *Id.* § 227(b)(3).  Subparagraph (B) provides for either

12  actual monetary loss sustained or $500 per violation.

13         As a preliminary matter, the Court notes that there appears to be a split in authority as to

14  what predicate conduct is required before a treble damages aware may be issued.  Some courts have

15  held that a defendant must have sent the unsolicited communication knowing or having reason to

16  know that such conduct was a violation of the law (*i.e.*, the TCPA) before treble damages may be

17  awarded.  Other courts have held that a defendant need only have willfully or knowingly sent the

18  unsolicited communication -- *i.e.*, knowledge of the law is not necessary.  *Compare Texas*, 164 F.

19  Supp. 2d at 894, 901 (awarding treble damages for TCPA violations that occurred after defendants

20  were well aware of the statute); *Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139

21  S.W.3d 342, 346-47 (Tex. Ct. App. 2004) (stating that "[t]he TCPA is willfully or knowingly

22  violated when the defendant knows of the TCPA, knows he does not have permission to send the

23  fax. . . and sends it anyway"); *and Covington & Burling v. Intl. Mktg. & Research*, No. Civ. 01-

24  0004360, 2003 WL 21384825, at *8 (D.C. Super. Ct. Apr. 17, 2003) (concluding that violations

25  were "willfully or knowingly" committed when defendant admitted he was aware of the TCPA and

26  was previously involved in TCPA litigation), *with Charvat v. Ryan*, 879 N.E.2d 765, 770-771 (Ohio

27  2007) (concluding that knowledge of the statute is not required to find either a willful or knowing

28  violation).

**United States District Court**
For the Northern District of California

1    The Court need not decide in the instant case whether knowledge of the law is required

2    before a treble damages award may be made under the TCPA.  Under either standard -- *i.e.*,

3    knowingly violating the TCPA or simply knowingly sending an unsolicited communication -- the

4    Court concludes that a treble damages award is proper in the instant case.

5    If knowledge of the law is required, the deemed admissions in the instant case establish this

6    element.[4]  *See* Brown Decl., Ex. 5 (Requests for Admission Nos. 16, 20-188) (asking Mr. Luxenberg

7    to admit to (1) "know[ing] that sending unsolicited facsimile advertisements violates the Telephone

8    Consumer Protection Act, 47 U.S.C. § 227, since prior to August 2004"; (2) to "willfully and

9    knowingly" violating the TCPA by sending each fax attached in the requests for admission; and (3)

10   to "admit[ting] in a deposition that [he] has ignored 25 or 30 judgments against [him] and [his]

11   companies for sending junk faxes").

12   If all that is required is a willful or knowing sending of an unsolicited communication, that

13   element is easily satisfied.  Mr. Luxenberg has admitted to operating a business that engaged in bulk

14   faxing.  *See* Docket No. 1 (Luxenberg Decl. ¶ 15) (stating that, "[p]rior to ceasing operations in

15   2006, Blue Jay, Inc. [of which he was the president] sent more than 3,334 faxes utilizing the services

16   of Protus IP Solutions, Inc."); *see also* Docket No. 27 (Order at 12) (taking note of deposition

17   testimony by Mr. Luxenberg that "he was responsible for arranging bulk faxing (500,000 per month)

18   on behalf of Blue Jay from 1998 to the end of 2006").

19   Of course, under the TCPA a court still has discretion as to whether a treble damages award

20   should be issued even where there is willful or knowing conduct.  An argument could be made that

21   such an award would be excessive in the instant case because Mr. Luxenberg sent only 28

22   unsolicited faxes through j2's servers such that the actual damage to j2 would be more than

23   compensated by the statutory damages award of $500 per violation.  However, the Court concludes

24   ─────────────────────

25   [4] In its first amended complaint, j2 alleges that, in June 2006, the Federal Communications
Commission issued a citation to Mr. Luxenberg, informing him that he was violating the TCPA.  *See*

26   FAC at 20-24.  j2 further alleges that, in December 2007, a court entered a judgment against Mr.
Luxenberg for violating of the TCPA.  *See* FAC at 26-29.  Even if these incidents are true, they are not

27   sufficient to establish that Mr. Luxenberg knowingly violated the law in the instant case because the
unsolicited faxes at issue were sent between August 2004 and February 2006 -- *i.e.*, prior to June 2006

28   and December 2007.  *See* Brown Decl., Ex. 5 (showing that twenty-eight faxes were send between
August 2004 and February 2006).

**United States District Court**
For the Northern District of California

1    that a treble damages award is appropriate because Mr. Luxenberg's conduct was knowingly in

2    violation of the TCPA (as reflected by the deemed admissions) and there is no evidence to indicate

3    that he has been deterred from his bulk faxing.  As noted in note 4, *supra*, the first amended

4    complaint alleges there have been other legal actions brought against Mr. Luxenberg for violating

5    the TCPA, including a judgment in 2007.  Awarding j2 treble damages would serve to deter Mr.

6    Luxenberg from sending unsolicited faxes in the future and thereby promote the purpose of the

7    TCPA.  In addition, an award of treble damages would only increase damages from $14,000 to

8    $42,000 for the twenty-eight faxes sent (*i.e.* 28 x $500 x 3).

9        Accordingly, the Court recommends that j2 be awarded treble statutory damages in the

10   amount of $42,000.

11            b.    <u>Injunctive Relief</u>

12       In addition to damages, j2 asks for injunctive relief.  The TCPA provides for injunctive relief

13   as a remedy.  *See* 47 U.S.C. § 227(b)(3)(A).  Because injunctions are authorized by statute,

14   irreparable injury need not be shown.  *See United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th

15   Cir. 1995) (noting that "a statutory injunction may be imposed when a violation of a statute has been

16   or is about to be committed").  The Court finds that an injunction is appropriate in the instant case,

17   particularly because Mr. Luxenberg is a repeat offender of the TCPA and has admitted to engaging

18   in bulk faxing.

19       The only issue remaining is whether the injunction sought by j2 is appropriate.  j2 asks for

20   the following injunction to be imposed.

21            That defendant NEIL LUXENBERG be enjoined and
     restrained from engaging in, committing, or performing, directly or
22   indirectly, by any means whatsoever, any of the following acts: using
     any telephone fax machine, computer, or other device to send, directly
23   or indirectly, to a telephone fax machine belonging to j2 GLOBAL
     COMMUNICATIONS, INC., an advertisement of the commercial
24   availability or quality of any property, goods, or services without the
     recipient's prior express invitation or permission of j2 GLOBAL
25   COMMUNICATIONS, INC., in writing or otherwise.

26            Not withstanding this provision, NEIL LUXENBERG may
     send to j2 GLOBAL COMMUNICATIONS, INC. a facsimile of the
27   commercial availability or quality of any property, goofs, or services if
     the following are true: (i) NEIL LUXENBERG has an established
28   business relationship with j2 GLOBAL COMMUNICATIONS INC.;

and (ii) NEIL LUXENBERG obtains the number of the j2 GLOBAL
COMMUNICATIONS, INC. telephone facsimile number through --
(I) the voluntary communication of such number, within the context of
such established business relationship, from j2 GLOBAL
COMMUNICATIONS, INC., or from (II) a directory, advertisement,
or site on the Internet to which j2 GLOBAL COMMUNICATIONS,
INC. voluntarily agreed to make available its facsimile number for
public distribution.

Docket No. 62 (proposed order).

The injunction requested by j2, however, is overbroad in scope because it prohibits conduct

that does not violate the TCPA.  Because j2 provides fax numbers to its customers, the exceptions

provided by the TCPA should apply not only to j2, but also to j2's customers who may have

permitted Mr. Luxenberg to send faxes or who may have established a business relationship with

Mr. Luxenberg.  Therefore, the Court finds that the proposed injunction should be modified to read

as follows.

That defendant NEIL LUXENBERG be enjoined and
restrained from engaging in, committing, or performing, directly or
indirectly, by any means whatsoever, any of the following acts: using
any telephone fax machine, computer, or other device to send, directly
or indirectly, to a telephone fax machine belonging to j2 GLOBAL
COMMUNICATIONS, INC., an advertisement of the commercial
availability or quality of any property, goods, or services without the
recipient's prior express invitation (*i.e.*, j2's customers) or permission
of j2 GLOBAL COMMUNICATIONS, INC., in writing or otherwise.

Not withstanding this provision, NEIL LUXENBERG may
send to a telephone fax machine belonging to j2 GLOBAL
COMMUNICATIONS, INC. a facsimile of the commercial
availability or quality of any property, goofs, or services if the
following are true: (i) NEIL LUXENBERG has an established
business relationship with j2 GLOBAL COMMUNICATIONS INC.
or one of j2's customers; and (ii) NEIL LUXENBERG obtains the
number of the j2 GLOBAL COMMUNICATIONS, INC. telephone
facsimile number through -- (I) the voluntary communication of such
number, within the context of such established business relationship,
from j2 GLOBAL COMMUNICATIONS, INC. or one of j2's
customers, or from (II) a directory, advertisement, or site on the
Internet to which j2 GLOBAL COMMUNICATIONS, INC. or one of
j2's customers voluntarily agreed to make available the facsimile
number for public distribution.

///

///

13

**III.    RECOMMENDATION**

For the foregoing reasons, the Court recommends that j2's motion for default judgment be granted and that j2 be awarded damages in the amount of $42,000 and injunctive relief in accordance with that described above.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated:  August 4, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

14